**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ANN KELLEY,                                        )
                                                    )    Case No. 2:14-cv-00856-RCJ-CWH
            Plaintiff,          )
                                                      )    **ORDER**
vs.                                                )
                                                      )
SMITH'S FOOD & DRUG CENTERS, INC.,                 )
            Defendant.              )
_____)

**INTRODUCTION**

This matter is before the Court on Plaintiff Ann Kelley's ("plaintiff") motion to compel (doc. # 25), filed October 7, 2014, Defendant Smith's Food & Drug Centers, Inc.'s ("defendant") response (doc. # 30), filed October 24, 2014, and plaintiff's reply (doc. # 32), filed October 31, 2014. Also before the Court is plaintiff's motion for protective order (doc. # 24), filed October 7, 2014, and defendant's response (doc. # 31), filed October 27, 2014. No reply was filed.

**BACKGROUND**

This is a slip-and-fall case removed from state court. Plaintiff alleges that on June 14, 2013, she slipped in a puddle of milk at defendant's store located at 1421 North Jones Boulevard, Las Vegas, Nevada, and sustained injuries. See Doc. # 1; Doc. # 25. Plaintiff sued defendant for negligence in state court, praying for general and special damages, along with fees, costs, interest, and any other appropriate relief. Id. The action was removed to this Court on June 2, 2014.

On August 8, 2014, the parties filed a proposed discovery plan and scheduling order, which this Court granted on August 11, 2014. See Doc. # 10; Doc. # 11. Then, on August 18, 2014, plaintiff filed a motion to compel the production of a video, following defense counsel's disclosure to plaintiff's

counsel of the existence of a store video containing footage of plaintiff's slip-and-fall. See Doc. # 12. At a hearing held on September 30, 2014, the Court denied plaintiff's motion, holding that defendant was not required to provide a copy of the video as part of its initial disclosures, and noting that plaintiff could properly bring the same motion at a later stage of discovery. See Doc. # 22. Thereafter, plaintiff filed a motion to compel the production of the video, along with a motion for protective order to prevent plaintiff's deposition until the video was produced. See Doc. # 24; Doc. # 25. On November 7, 2014, the Court conducted a hearing on the motions, after which the motions were taken under submission. See Doc. # 33.

## DISCUSSION

**1.  Motion to Compel Video**

Plaintiff moves the Court to compel defendant to produce the store video containing footage of plaintiff's slip-and-fall. In support, plaintiff contends the video is "substantive" evidence that could help, among others, plaintiff defend herself against defendant's claim of comparative negligence. Plaintiff also contends that the video depicts "actual facts" of plaintiff's slip-and-fall, further demonstrating that it is "dispositive to th[is] case." Doc. # 25 at 6. Additionally, per plaintiff, although she requested the video in her Request for Production of Documents ("RFP") pursuant to Rule 34 of the Federal Rules of Civil Procedure ("FRCP"), defendant "refuse[d]" to surrender the video. See id. at 11 (defendant's response to plaintiff's RFP). Plaintiff maintains that defendant errs in withholding the video because the video is not "testimony" and therefore cannot be considered impeachment evidence. Id. at 6. Plaintiff further contends that defendant's refusal to produce the video amounts to an "ambush tactic" and ultimately "stymies settlement negotiations" because plaintiff "does not know the objective evidence surrounding the incident." Id. at 7.

Defendant, in response, concedes that the video contains substantive evidence but points out that it also contains impeachment evidence, contrary to plaintiff's assertion. Indeed, per defendant, plaintiff's argument "falls short by implying that character evidence or testimony is the **only** way to impeach a witness or party." Doc. # 30 at 5. Defendant also argues that any impeachment value of the video would be lost if plaintiff is allowed to view the video before her deposition because plaintiff "likely" would use her knowledge of the video not only to paint herself in the best light, but to "testify

untruthfully" at her deposition. Id. at 6. Defendant further argues that plaintiff will not suffer prejudice if she fails to access the video before her deposition because the only way the video could be used to "ambush" plaintiff is if she lies about the circumstances surrounding her fall, and anyway defendant intends to produce a copy of the video following plaintiff's deposition. Defendant then argues that "varying levels of access to the video"[1] are justified in this case because plaintiff should have a clearer recollection of the events surrounding her fall, especially since the incident purportedly had a far-reaching effect on her life, whereas defendant's employees would view the incident as "just another day on the job." Id. at 9. In the spirit of fairness, however, defendant asserts that it is willing to withhold the video from its employees prior to their own depositions.

According to defendant, moreover, "temporarily withhold[ing]" the store video follows the decisions of other courts, although defendant admits that the cases are distinguishable because these cases involve "surveillance" videos–i.e., videos containing footage "captured or retained in anticipation of litigation." See Doc. # 30 at 7. Nevertheless, per defendant, the video in the instant case could be considered "sub rosa" evidence–i.e., evidence "recorded after the claim arises... to show that plaintiff's injuries are not as severe or disabling as [p]laintiff alleges." Id.

In reply, plaintiff contends that the cases defendant cites are distinguishable from the instant case because those cases involve sub rosa or surveillance videos, and the video at issue here is neither. Plaintiff then turns to cases in which courts ordered withholding parties to produce the recordings. For example, plaintiff relies upon Roberts v. Americable Int'l, 883 F.Supp. 499 (E.D. Cal. 1995), in which the court ordered plaintiff to produce the recordings prior to defendant's deposition so as to promote notions of fairness, and prevent plaintiff from harassing or annoying defendant. Plaintiff then turns to Wheeler v. Fiesta Palms, LLC, *et al.*, No. 2:06-cv-01105-HDM-PAL (D. Nev. Mar. 21, 2007) (Doc. # 22), in which the court ordered defendant to produce the recording, finding that defendant's reasons for withholding the recording amounted to broad and conclusory allegations of potential harm. Finally, plaintiff asks the Court to award her "reasonable expenses... incurred... [for] bringing this [m]otion." Doc. # 32 at 10.

---

[1] Defendant, in essence, asserts that only defendant and its employees, not plaintiff, should be able to access the video at issue.

1    At oral argument, defendant asserts that plaintiff improperly presents new case law for the first time in her reply. Defendant then points out that no case law in the Ninth Circuit squarely addresses the issue before this Court, and Wheeler is neither on point nor binding on the Court. Defendant also declares that evidence exists calling into question plaintiff's truthfulness, including her prior convictions, alcohol use, and inadequate answers to defendant's interrogatories. Based on defense counsel's prior experiences, moreover, defendant alleges that it is not uncommon for plaintiffs to be dishonest in slip-and-fall cases.

Also at oral argument, plaintiff restates its earlier claims. Plaintiff adds that, contrary to defendant's assertion, if the video were produced and revealed information contrary to plaintiff's position, plaintiff would withdraw the action from this Court.

The question before this Court is whether defendant should be required to produce the video **prior** to plaintiff's deposition. Although the Ninth Circuit has not yet decided this issue, the Court finds persuasive the weight of authority from courts in other circuits that have addressed the issue.

### a.   Plaintiff's RFP

"[T]he recipient of a properly propounded document request **must produce** all responsive, non-privileged documents without regard to the recipient's view of how that information might be used at trial." Varga v. Rockwell Int'l Corp., 242 F.3d 693, 697 (6th Cir. 2001) (emphasis added). Indeed, a party **"may not, under any circumstances, hold back materials** responsive to a proper discovery request because it prefers to use the evidence as surprise impeachment evidence at trial." Id. (emphasis added). In other words, a "specific discovery request makes impeachment evidence [such as the video at issue] discoverable." Newsome v. Penske Truck Leasing Corp., 437 F. Supp. 2d 431, 437 (D. Md. 2006)); see also Terrell v. OTS, Inc., No. 109-CV-626-RWS, 2011 WL 864501, at *2 (N.D. Ga. Mar. 9, 2011) ("[E]ven assuming the[..] [recordings] were only for impeachment, these recordings should have been disclosed [and produced] because they were specifically requested by the Plaintiff in discovery.") (citing Varga, 242 F.3d at 697). Thus, although the video at issue has impeachment value, defendant should have produced the video upon its receipt of plaintiff's RFP because the video was properly and specifically requested by plaintiff in that RFP. See Doc. # 25 at 11 (defendant's response to plaintiff's RFP).

**b.     Goals of Discovery**

Defendant's assertion regarding the propriety of withholding the video from plaintiff or defendant's employees is not justified. Indeed, preventing access to the video runs counter to the paramount goals of transparency, collaboration, and efficiency in the discovery process. See Apple, Inc. v. Samsung Electronics Co., No. 12-CV-0630-LHK PSG, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) ("[T]ransparency and collaboration [are] essential to meaningful, cost-effective discovery"); The Sedona Conference, The Sedona Conference Cooperation Proclamation (2008) (http://www.thesedonaconference.org/content/tsc_cooperation_proclamation) (promoting "open and forthright information sharing... to facilitate cooperative, collaborative, transparent discovery."). Courts generally have ordered parties to produce materials to promote such goals, particularly the goal of transparency. See e.g., Whitney v. City of Milan, Tenn., No. 09-1127, 2010 WL 2011663, at *3 (W.D. Tenn. May 20, 2010) (Court denies plaintiff's request to withhold recordings for impeachment purposes until after depositions are complete, holding, among others, that gamesmanship with information is discouraged by the federal rules); Rofail v. United States of America, 227 F.R.D. 53, 58 (E.D.N.Y. 2005) (Court held that plaintiff must produce recording because "[o]pen discovery is the norm. Gamesmanship with information is discouraged and surprises are abhorred."). Given this preference for transparent and collaborative discovery, the video must be produced prior to plaintiff's deposition.

**c.     Plaintiff's (Dis)Honesty**

Defendant fails to provide facts or evidence to support its assertion that plaintiff is untruthful,[2] and that withholding the video will encourage plaintiff to testify honestly or enable defendant to catch plaintiff in a lie. While the Court emphathizes with defense counsel's prior experiences, absent evidence of prior mendacity, to conclude that plaintiff in this case would "likely" or definitely lie, or testify truthfully only because of the threat that a video might exist, is a speculative and conclusory claim. Moreover, this Court refuses to adopt a rule urged by defendant that presumes the dishonesty not only of plaintiffs, but counsel, who are officers of the Court. Further, this Court refuses to adopt

---

[2] The Court notes that defendant asserts plaintiff's purported untruthfulness for the first time at oral argument.

a rule urged by defendant that allows parties to freely withhold documents from production and to randomly police discovery based on the arbitrary perception of a party, without cause, justification, or notice. After all, "[c]ivil discovery is not a game of ambush." Karr v. Four Seasons Mar., Ltd., No. CIV.A.02-3413, 2004 WL 797728, at *3 (E.D. La. Apr. 12, 2004).

### d. Impeachment Evidence Exception

Meanwhile, defendant's refusal to produce the video is not protected by the impeachment evidence exception of Rule 26 of the FRCP. The impeachment-evidence exception allows parties to withhold some of their evidence, but only evidence that they will use "solely for impeachment" purposes, i.e., not to bolster the "substance" of their own case.[3] However, courts that have ruled on the issue do not agree upon the meaning of "solely for impeachment." Some courts view evidence as used "solely for impeachment" only if it is devoid of any substantive value and its sole value is impeachment. See Klonoski v. Mahlab, 156 F.3d 255, 270 (1st Cir.1998), superseded by rule change on other grounds In re Subpoena to Witzel, 531 F.3d 113 (1st Cir. Jul.7, 2008). Other courts suggest that evidence is used "solely for impeachment" if a party's subjective purpose is impeachment, regardless of whether the evidence contains any substantive value. See DeBiasio v. Ill. Cent. R.R., 52 F.3d 678, 686 (7th Cir. 1995) (holding that lower court's refusal to admit undisclosed evidence is abuse of discretion even though the evidence contains substantive value supporting defendant's key factual assertion). Nevertheless, "[i]f a party chooses in good faith to use evidence for impeachment purposes only, and if the party withholds the evidence from its Rule 26 mandatory disclosure on that basis, it becomes a court's obligation to decide whether the evidence can reasonably be used solely for impeachment." McDaid v. Stanley Fastening Sys., LP, No. CIV. 07-709, 2008 WL 2928387, at *2 (E.D. Pa. July 28, 2008).

Evidence before a court usually fits into one of three categories: (1) evidence that by its very nature is useful only for impeachment; (2) evidence that may have some substantive value but can be limited through the use of jury instructions or other trial-management tools; and (3) evidence that

---

[3] "Substantive evidence is that which is offered to establish the truth of a matter to be determined by the trier of fact... Impeachment evidence, on the other hand, is that which is offered to discredit a witness... to reduce the effectiveness of [her] testimony by bringing forth evidence which explains why the jury should not put faith in... [her] testimony." John P. Frank, Pretrial Conferences & Discovery-Disclosures or Surprise?, 1965 Ins. L.J. 661, 664 (1965)).

carries too much substantive value, too little impeachment value, or both, to be reasonably susceptible to an impeachment-only limitation. McDaid, 709, 2008 WL 2928387, at *2.

Here, the video at issue falls into the third category. Indeed, defendant concedes that the video contains substantive evidence for plaintiff. After all, the video can help establish the truth of plaintiff's description of the incident. Moreover, defendant rightly asserts that the video contains impeachment value because it could show why the jury should not put faith in plaintiff's testimony. However, these two functions are not logically separable: either the events that led to plaintiff's injuries on defendant's premises did or did not transpire in the manner described by plaintiff. Evidence that "impeaches" either proposition can generally be expected to provide substantive support for the other. Because the video's impeachment value is so closely linked to its substantive value, and the evidence the video offers cannot be realistically confined to use for impeachment purposes, the video must be produced. See Klonski, 156 F.3d at 270.

### e.  "Surveillance" and "Sub-Rosa" Videos

Lastly, defendant's theories regarding "surveillance" and "sub rosa" videos are inapposite because, as defendant rightly concedes, these videos are distinguishable from the video at issue here. As such, the Court concludes that defendant must produce the video prior to plaintiff's deposition.[4]

### f.  Extension of Discovery Deadlines

Defendant, in its opposition, requests at least a 60-day extension of the discovery deadlines because plaintiff's failure to submit to a deposition has purportedly created difficulties in defendant's ability to properly carry out discovery in the instant case. Plaintiff does not address defendant's request in her reply.

This Court finds that good cause exists to grant defendant's unopposed request for an extension, especially since this Court recognizes that production of the video at this juncture affects the discovery time line of the instant case.

//

---

[4] This Court also notes that some courts have required production of a recording on the ground that a party is entitled to his or her statements on the recording pursuant to Rule 26(b)(3)(C)(ii) of the FRCP. See e.g., Whitney, 2010 WL 2011663, at *3. However, the Court finds that this analysis is not applicable to the instant case.

      **g.**     **Attorney's Fees and Costs**

Plaintiff, in the last sentence of her reply, asks the Court to award her "reasonable expenses... incurred... [for] bringing this [m]otion." Doc. # 32 at 10. However, arguments raised for the first time in a reply brief need not be considered by this Court. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). As such, this Court will not consider awarding attorney's fees and costs based on plaintiff's fleeting request in her reply.

**2.**    **Motion for Protective Order**

Because this Court finds that plaintiff is entitled to the video at issue, the Court grants plaintiff's motion for a protective order, which protects plaintiff from "being forced to submit to a [d]eposition without [first] being able to view the video." Doc. # 24 at 4.

## CONCLUSION AND ORDER

Based on the foregoing and good cause appearing therefore,

**IT IS HEREBY ORDERED** that plaintiff's motion to compel video (doc. # 25), and motion for protective order (doc. # 24), are **granted**. Defendant shall produce the video **within ten (10) days from the issuance of this order**.

**IT IS FURTHER ORDERED** that the parties shall meet and confer, and shall file a stipulation extending discovery deadlines, pursuant to this Court's local rules, **within ten (10) days from the issuance of this order**.

**IT IS FURTHER ORDERED** that plaintiff's request for attorney's fees and costs is **denied**.

DATED: November 19, 2014

_____
**C.W. Hoffman, Jr.
United States Magistrate Judge**